**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| PATRICIA NELSON-WOOTEN, ) | |
| ) | CASE NO. 1:14CV2500 |
| Plaintiff, ) | |
| ) | |
| v. ) | MAGISTRATE JUDGE GREG WHITE |
| ) | |
| CAROLYN W. COLVIN, ) | |
| Acting Commissioner of Social Security ) | **MEMORANDUM OPINION & ORDER** |
| ) | |
| Defendant. ) | |

Plaintiff Patricia Nelson-Wooten ("Nelson-Wooten") challenges the final decision of the Acting Commissioner of Social Security, Carolyn W. Colvin ("Commissioner"), denying her claim for a Period of Disability ("POD") and Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("Act"), 42 U.S.C. §§ 416(i) & 423. This matter is before the Court pursuant to 42 U.S.C. § 405(g) and the consent of the parties entered under the authority of 28 U.S.C. § 636(c)(2).

For the reasons set forth below, the final decision of the Commissioner is AFFIRMED.

## I. Procedural History

In September 2011, Nelson-Wooten filed an application for POD and DIB, alleging a disability onset date of October 15, 2008[1] and claiming she was disabled due to hyperthyroidism, back problems, muscle spasms, scoliosis, "deteriorated discs in back," joint problems in her

---

[1] Nelson-Wooten subsequently amended her onset date to May 1, 2011. (Tr. 14, 30.)

knees, bad eyesight, and high blood pressure. (Tr. 14, 151, 200, 229.) Her application was denied both initially and upon reconsideration. (Tr. 63-74, 76-88.) Nelson-Wooten timely requested an administrative hearing.

On May 8, 2013, an Administrative Law Judge ("ALJ") held a hearing during which Nelson-Wooten, represented by counsel, and an impartial vocational expert ("VE") testified. (Tr. 27-62.) On July 25, 2013, the ALJ found Nelson-Wooten was able to perform a significant number of jobs in the national economy and, therefore, was not disabled. (Tr. 14-21.) The ALJ's decision became final when the Appeals Council denied further review. (Tr. 1-7.)

## II. Evidence

*Personal and Vocational Evidence*

Age fifty-one (51) at the time of her administrative hearing, Nelson-Wooten is a "person closely approaching advance age" under social security regulations. *See* 20 C.F.R. § 416.963(d). Nelson-Wooten has a high school education and attended one year of college. (Tr. 201.) She has past relevant work as an insurance clerk and state tested nursing assistant. (Tr. 56.)

*Hearing Testimony*

During the May 8, 2013 hearing, Nelson-Wooten testified to the following:

- She lives in a first floor apartment with her husband and adult daughter. (Tr. 46, 52.)

- Between 2006 and 2008, she worked as an insurance clerk. (Tr. 42-45.) In this job, she did a lot of typing and "computer work." (Tr. 45.) This "bothered" her hands, causing her to miss a lot of work. (Tr. 45.) She later worked as a state tested nursing assistant. (Tr. 38-39.) She assisted patients with their daily activities, such as bathing and eating. (Tr. 38.) She worked part-time in this position because she could not physically handle full-time work. (Tr. 38-39.) She last worked in May 2011. (Tr. 38.)

- She was in motor vehicle accidents in 1988 and June 2011. (Tr. 36-37.) The first accident caused back problems, but she was able to continue working. (Tr. 37-38.) However, her back problems "got progressively worse as time went on." (Tr. 38.)

- She also suffers from carpal tunnel syndrome. She was diagnosed with this condition about ten years ago. (Tr. 33.) It has "gotten worse" over the years and is "hindering [her] activities." *Id.* She cannot use the computer anymore because

> it "bothers" her. (Tr. 45.) The pain is worse in her right hand, wrist, and arm. *Id*. It prevents her from "do[ing] too much" around the house. (Tr. 49.) She is unable to drive because holding and turning the wheel hurts her wrists and hands. (Tr. 49-50.)

- She has problems with both of her knees. (Tr. 35.) The week before the hearing, her legs "gave out" causing her to slip and break her right knee. (Tr. 48.) She also has "torn tendons" in her right knee as a result of the accident, as well as a sprained left knee. *Id*. She believed she was going to have surgery on her right knee. (Tr. 47.)

- She has visual problems but is able to read with glasses. (Tr. 35.)

- She takes Vicodin, Prednisone, Motrin, Flexeril, Armour Thyroid, and Detrol for her conditions. (Tr. 53-54.)

- She is unable to do much around the house because of her impairments. Her daughter does the household chores and grocery shopping. (Tr. 50.) She cannot do the dishes or any light household cleaning. (Tr. 49.) She can lift up to five pounds with her left hand, but not with the right. (Tr. 55.) She can dress herself, prepare microwaveable meals, and help with the laundry. (Tr. 48-49.) She needs help getting into the shower because she has difficulty lifting her right leg. (Tr. 47.) Sometimes she cannot get out of bed without assistance. (Tr. 51.)

- On a typical day, she sits on the porch, lays down, and watches television. (Tr. 51.) She tries to get some exercise by taking a short walk around the lobby of her apartment building. (Tr. 52.) Her daughter takes her out to dinner or to visit her mother. (Tr. 52.)

The VE testified Nelson-Wooten had past relevant work as an insurance clerk and state tested nursing assistant. (Tr. 56.) The ALJ then posed the following hypothetical:

> Assuming someone of the claimant's age, education, and work experience; who's able to perform at a light level, lifting up to 20 pounds occasionally, up to 10 pounds frequently; standing and/or walking for up to six hours and sitting for up to six hours in an eight-hour workday with normal breaks; frequently climbing ramps and stairs, but never climbing ladders, ropes, or scaffolds; frequently balancing, stooping, kneeling; occasionally crouching and crawling; avoid all exposure to hazardous machinery and unprotected heights. Okay? What about those past jobs?

(Tr. 57.) The VE testified such an individual could perform Nelson-Wooten's past work as an insurance clerk, and could also perform the additional jobs of packager (light, unskilled, SVP 2); mail clerk (light, unskilled, SVP 2); and cafeteria attendant (light, unskilled, SVP 2). *Id*.

The ALJ then posed a second hypothetical, as follows:

Okay, and the second hypothetical will be the same as the first, but at sedentary,

3

>lifting up to 10 pounds occasionally, standing/walking for up to two hours and sitting for up to six hours in an eight-hour workday with normal breaks.

(Tr. 57-58.) The VE testified such an individual could perform Nelson-Wooten's past relevant work as insurance clerk, and could also perform the jobs of polisher (sedentary, unskilled, SVP 2); order clerk, food and beverage (sedentary, unskilled, SVP 2); and, call-out operator (sedentary, unskilled, SVP 2). (Tr. 58.)

The ALJ then added to both the first and second hypotheticals the additional limitation of only frequent handling and fingering in the dominant (i.e., right) hand. (Tr. 58.) The VE testified that "nothing would change" and his answer would be the same for both hypotheticals. (Tr. 59.) The ALJ then added the limitation of frequent bilateral handling and fingering to both the first and second hypotheticals. *Id*. The VE testified, again, that his answers would stay the same. *Id.*

The ALJ then added to all of the above hypotheticals the additional limitation of occasional use of foot controls with the right lower extremity. (Tr. 60.) The VE testified that all of his answers would remain the same. *Id*. Finally, the ALJ added the limitation of bilateral occasional use of foot controls, to which the VE again responded his answers would remain the same. *Id*.

Nelson-Wooten's attorney then asked "[i]f an individual is off task 20 percent of the day due to pain, would be there be work out in the national economy that an individual could do?" (Tr. 60.) The VE responded in the negative. *Id*. The ALJ then asked whether there would be any work available if the individual was off-task five percent of the day. *Id*. The VE responded that "five percent would not negatively affect work." (Tr. 61.)

### III. Standard for Disability

In order to establish entitlement to DIB under the Act, a claimant must be insured at the time of disability and must prove an inability to engage "in substantial gainful activity by reason of any medically determinable physical or mental impairment," or combination of impairments,

4

that can be expected to "result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. §§ 404.130, 404.315 and 404.1505(a).²

A claimant is entitled to a POD only if: (1) she had a disability; (2) she was insured when she became disabled; and, (3) she filed while she was disabled or within twelve months of the date the disability ended. 42 U.S.C. § 416(i)(2)(E); 20 C.F.R. § 404.320.

Nelson-Wooten was insured on her alleged amended disability onset date, May 1, 2011, and remained insured through the date of the ALJ's decision, July 25, 2013. (Tr. 14.) Therefore, in order to be entitled to POD and DIB, Nelson-Wooten must establish a continuous twelve month period of disability commencing between those dates. Any discontinuity in the twelve month period precludes an entitlement to benefits. *See Mullis v. Bowen,* 861 F.2d 991, 994 (6th Cir. 1988); *Henry v. Gardner*, 381 F.2d 191, 195 (6th Cir. 1967).

### IV. Summary of Commissioner's Decision

The ALJ found Nelson-Wooten established medically determinable, severe impairments, due to hypertension, hyperthyroidism, proteinuria, disorders of the spine, including lumbar and cervical degenerative disc disease and bulging discs, thyroid gland disorder, dysfunction of joints, obesity, plantar fasciitis, and dermal hypersensitivity reaction; however, her impairments, either singularly or in combination, did not meet or equal one listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. (Tr. 16- 18.) Nelson-Wooten was determined to have a Residual Functional Capacity

---

² The entire process entails a five-step analysis as follows: First, the claimant must not be engaged in "substantial gainful activity." Second, the claimant must suffer from a "severe impairment." A "severe impairment" is one which "significantly limits ... physical or mental ability to do basic work activities." Third, if the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment, or combination of impairments, meets a required listing under 20 C.F.R. § 404, Subpt. P, App. 1, the claimant is presumed to be disabled regardless of age, education or work experience. 20 C.F.R. §§ 404.1520(d) and 416.920(d)(2000). Fourth, if the claimant's impairment does not prevent the performance of past relevant work, the claimant is not disabled. For the fifth and final step, even though the claimant's impairment does prevent performance of past relevant work, if other work exists in the national economy that can be performed, the claimant is not disabled. *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990).

("RFC") for a limited range of light work. (Tr. 18-19.) The ALJ determined Nelson-Wooten was able to perform her past relevant work as an insurance clerk, and used the Medical Vocational Guidelines ("the grid") as a framework and VE testimony to determine she was not disabled. (Tr. 19-21.)

### V. Standard of Review

This Court's review is limited to determining whether there is substantial evidence in the record to support the ALJ's findings of fact and whether the correct legal standards were applied. *See Elam v. Comm'r of Soc. Sec.*, 348 F.3d 124, 125 (6th Cir. 2003) ("decision must be affirmed if the administrative law judge's findings and inferences are reasonably drawn from the record or supported by substantial evidence, even if that evidence could support a contrary decision."); *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983). Substantial evidence has been defined as "'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (quoting *Cutlip v. Sec'y of Health and Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)).

The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion. *Buxton v. Halter*, 246 F.3d 762, 772-3 (6th Cir. 2001) (*citing Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986)); *see also Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999) ("Even if the evidence could also support another conclusion, the decision of the Administrative Law Judge must stand if the evidence could reasonably support the conclusion reached. *See Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997).") This is so because there is a "zone of choice" within which the Commissioner can act, without the fear of court interference. *Mullen*, 800 F.2d at 545 (*citing Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984)).

In addition to considering whether the Commissioner's decision was supported by substantial evidence, the Court must determine whether proper legal standards were applied.

Failure of the Commissioner to apply the correct legal standards as promulgated by the regulations is grounds for reversal. *See, e.g.,White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 281 (6th Cir. 2009); *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2006) ("Even if supported by substantial evidence, however, a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.")

Finally, a district court cannot uphold an ALJ's decision, even if there "is enough evidence in the record to support the decision, [where] the reasons given by the trier of fact do not build an accurate and logical bridge between the evidence and the result." *Fleischer v. Astrue*, 774 F. Supp. 2d 875, 877 (N.D. Ohio 2011) (*quoting Sarchet v. Chater*, 78 F.3d 305, 307 (7th Cir.1996); *accord Shrader v. Astrue*, 2012 WL 5383120 (E.D. Mich. Nov. 1, 2012) ("If relevant evidence is not mentioned, the Court cannot determine if it was discounted or merely overlooked."); *McHugh v. Astrue*, 2011 WL 6130824 (S.D. Ohio Nov. 15, 2011); *Gilliam v. Astrue*, 2010 WL 2837260 (E.D. Tenn. July 19, 2010); *Hook v. Astrue*, 2010 WL 2929562 (N.D. Ohio July 9, 2010).

## VI. Analysis

### *Duty to Develop the Record*

In her first assignment of error, Nelson-Wooten argues the ALJ "failed in his responsibility to develop a full and fair record" regarding her carpal tunnel syndrome and knee impairments. (Doc. No. 13 at 8.) She maintains that, although the ALJ was aware that counsel had failed to submit treatment records regarding these conditions, the ALJ made no effort to ensure these records were considered or otherwise "explore whether this evidence, clearly critical to the evaluation of Plaintiff's disability, should be obtained." *Id*. at 9. Nelson-Wooten asserts the ALJ's failure in this regard is particularly troublesome in light of Nelson-Wooten's hearing testimony that she had "significant treatment and limitations" relating to her carpal tunnel syndrome and knee impairments.

The Commissioner argues this assignment of error is without merit because Nelson-Wooten is improperly attempting to "pin the blame for [her] inadequate or ineffective counsel on the ALJ." (Doc. No. 16 at 7.) The Commissioner emphasizes Nelson-Wooten was represented by counsel at the hearing and "neither Plaintiff nor counsel indicated that there were any missing or outstanding health records that needed to be obtained." *Id*. at 8. She argues the ALJ does not have a heightened duty to develop the record where, as here, the claimant is represented by counsel. Moreover, the Commissioner asserts that "[b]ecause the issue of missing evidence or an inadequately developed record was never brought to the attention of the ALJ, it is too late to do so now." *Id.* at 9.

In the Sixth Circuit, it is well established that the claimant—and not the ALJ—has the burden to produce evidence in support of a disability claim. *See, e.g., Wilson v. Comm'r of Soc. Sec*., 280 Fed. App'x. 456, 459 (6th Cir. 2008) (citing 20 C.F.R. § 404.1512(a)). *See also Struthers v. Comm'r of Soc. Sec*., 1999 WL 357818 at \*2 (6th Cir. May 26, 1999) ("[I]t is the duty of the claimant, rather than the administrative law judge, to develop the record to the extent of providing evidence of mental impairment."); *Landsaw v. Sec'y. of Health & Human Servs*., 803 F.2d 211, 214 (6th Cir. 1986) ("The burden of providing a complete record, defined as evidence complete and detailed enough to enable the Secretary to make a disability determination, rests with the claimant. 20 C.F.R. §§ 416.912, 416.913(d)."); *cf. Wright–Hines v. Comm'r of Soc. Sec*., 597 F.3d 392, 396 (6th Cir. 2010) (although an "ALJ has an inquisitorial duty to seek clarification on material facts," a plaintiff, who is represented by counsel, must provide a "factual record" relating to the length of his employment when his past work was part of the record and was the basis of the initial decision to deny benefits). However, there is a special, heightened duty requiring the ALJ to develop the record when the plaintiff is "(1) without counsel, (2) incapable of presenting an effective case, and (3) unfamiliar with hearing procedures." *Wilson,* 280 Fed. App'x. at 459 (citing *Lashley v. Sec'y of Health & Human Servs*., 708 F.2d 1048, 1051–52 (6th Cir. 1983)).

In the case at bar, it is undisputed Nelson-Wooten was represented by counsel at the hearing. (Tr. 29) Thus, the ALJ had no heightened duty to develop the record and "the ultimate burden of proving disability" remained squarely on Nelson-Wooten. *See Wilson*, 280 Fed. Appx. at 459 (citing *Trandafir v. Comm'r of Soc. Sec.*, 58 Fed. Appx. 113, 115 (6th Cir. Jan. 31, 2003)). *See also Meadows v. Astrue*, 2012 WL 5205798 at * 4 (N.D. Ohio Sept. 25, 2012); *Guy v. Astrue*, 2010 WL 1141526 at * 10-11 (M.D. Tenn. March 4, 2010). Therefore, to the extent the record is incomplete, such deficiency is imputed to Nelson-Wooten and fails to provide justification for a remand.

Nelson-Wooten nevertheless argues a remand is necessary because the ALJ's "complete failure to attempt to understand the true state of [her] medical impairments and limitations was prejudicial to Plaintiff and resulted in a decision that is not predicated upon a complete record or proper legal standards." (Doc. No. 13 at 9.) The Court disagrees. As an initial matter, the ALJ did not "completely fail" to ascertain the nature of Nelson-Wooten's carpal tunnel syndrome and right knee impairment. As discussed below, the record reflects the ALJ questioned Nelson-Wooten about both of these conditions during the hearing and discussed them in the decision.

With respect to carpal tunnel syndrome, Nelson-Wooten's counsel identified this condition as a severe impairment during the hearing but acknowledged he "did not see any treatment records for the carpal tunnel" in the record before the ALJ. (Tr. 32.) Counsel went on to indicate that records relating to Nelson-Wooten's carpal tunnel syndrome were likely contained in updated medical records that counsel had intended to obtain before the hearing; however, he stated he had "screwed up" and mistakenly obtained older records instead. (Tr. 33.) The ALJ indicated that, in the absence of treatment records, he would consider Nelson-Wooten's hearing testimony about her carpal tunnel syndrome symptoms and treatment. *Id*. At no time did counsel ask the ALJ to hold the record open to allow him to submit the missing records.

The ALJ then questioned Nelson-Wooten about her carpal tunnel syndrome. Nelson-Wooten testified she was diagnosed with carpal tunnel syndrome "over 10 years ago but it's

9

gotten worse." (Tr. 33.) She explained she "missed a lot of work" over the years because her hands were "bothering her." (Tr. 45.) In particular, Nelson-Wooten testified she could no longer drive or use the computer because of this condition. (Tr. 45, 49-50.) She also stated she was unable to do the dishes or help out much around the house because of her wrist and arm pain. (Tr. 48-49.) Finally, Nelson-Wooten testified she had recently received injections in both of her wrists, and that she had a bad reaction to the injections. (Tr. 32-33.)

With respect to her knee impairments, Nelson-Wooten testified she had problems with both of her knees. (Tr. 35.) Her counsel explained Nelson-Wooten had "braces on both knees now, has problems walking . . . [is using] crutches today. But that's a recent diagnosis, and that's not something that we're claiming is going on today." (Tr. 35-36.) The ALJ stated he had not seen anything in the record regarding Nelson-Wooten's knees and asked counsel to identify any relevant documents in the record regarding her knee impairment. (Tr. 36.) Counsel stated "I didn't see [any records] either, Your Honor." *Id.* Nelson-Wooten also testified that, the week before the hearing, she slipped and broke her right knee. (Tr. 48.) She indicated she believed she was going to have knee surgery as a result of that fall. (Tr. 47.) Counsel expressly acknowledged Nelson-Wooten's recent knee injury would not meet the twelve month durational requirement. (Tr. 48.) Again, counsel did not ask the ALJ to hold the record open to allow Nelson-Wooten the opportunity to submit additional records.

In the decision, the ALJ addressed Nelson-Wooten's carpal tunnel syndrome and knee impairments as follows. At step two, the ALJ found these conditions to be non-severe but explained that he nevertheless included functional limitations relating to Nelson-Wooten's carpal tunnel syndrome in the RFC:

> The claimant testified she suffered from carpal tunnel syndrome and that her doctor diagnosed this condition. However, the medical evidence of record does not confirm this diagnosis and the claimant or her representative did not submit such documentation following the hearing. Despite the lack of evidence to support a diagnosis of carpal tunnel syndrome, the undersigned considered the claimant's subjective complaints and included limitations with handling and fingering in the assessed residual functional capacity.

10

> \* \* \*   She recently injured her right knee. However, this injury has not lasted for at least 12 months and there is no evidence that it will limit her work functionality for at least 12 months. Therefore, the undersigned finds that these are not severe impairments.

(Tr. 16-17.)

At step four, the ALJ considered Nelson-Wooten's self-reported symptoms and limitations, as well as the objective medical evidence regarding her neck and back pain. (Tr. 18-19.) The ALJ concluded Nelson-Wooten's medically determinable impairments could reasonably be expected to cause her alleged symptoms; however, her statements concerning the intensity, persistence and limiting effects of her symptoms were not entirely credible. (Tr. 19.) In particular, the ALJ noted Nelson-Wooten had received "relatively conservative treatment for her impairments" and "the medication the claimant takes is not consistent with an individual who is completely disabled or who suffers from the level of pain described by the claimant." *Id*. The ALJ further found as follows:

> At the hearing, claimant alleged that she could not do much of anything as a result of her pain. However, this is at odds with her Function Report of 2011 (a date following her motor vehicle accident of June 2011). The claimant stated she had trouble with self-care, but testified at the hearing that she needed help getting into the shower but could otherwise dress herself and perform personal hygiene. In addition, she admitted she could help with laundry a little bit, though she stated that her wrist prevented her from doing more. The claimant's statements at the hearing regarding her inability to perform household chores are not consistent with her medical treatment history or the objective evidence of record. For instance, on January 30, 2013, the claimant had normal range of motion, muscle strength, and stability in all extremities without pain (Ex. 11F/8).
>
> The undersigned gives great weight to the opinion of Michael Lehv, M.D., the State agency medical consultant, because his opinion is consistent with the claimant's medical history, including her conservative treatment and recent physical examinations (Exh. 3A). The undersigned also gives significant weight to the consultative examiner, Harvey Lester, M.D. (Exh. 7F), as his opinion is generally supported by the record.
>
> The record contains no opinion from any of the claimant's treating doctors regarding the claimant's functional abilities. This factor weighs against the claimant's allegations that her pain and other impairments prevent her from performing work as described in the assessed residual functional capacity.

*Id.*[3]  The ALJ formulated the RFC as follows:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except she can frequently climb ramps and stairs, never climb ladders, ropes or scaffolds.  The claimant can frequently balance, stoop, and knee[l], and occasionally crouch and crawl.  She should avoid all exposure to hazardous machinery and unprotected heights.  In addition, the claimant is limited to frequent handling and fingering with the bilateral hands.

(Tr. 18.)  Based on the above, the ALJ found Nelson-Wooten could perform her past relevant work as an insurance clerk and could also perform representative occupations such as packager; mail clerk; and, café attendant.  (Tr. 20-21.)

Nelson-Wooten does not challenge the ALJ's step two finding or credibility analysis.  Nor does she identify any particular additional limitations she believes the ALJ should have included in the RFC relating to her carpal tunnel syndrome and/or knee impairments.  Rather, Nelson-Wooten's argument is that the ALJ erred because he "did not explore whether [Nelson-Wooten's records regarding her carpal tunnel and knee impairments], clearly critical to the evaluation of Plaintiff's disability, should be obtained." (Doc. No. 13 at 9.)  Thus, Nelson-Wooten maintains a "remand, for consideration of a full, or even adequate, evidentiary record, is necessary." *Id.*

The Court disagrees.  As set forth above, the ALJ questioned Nelson-Wooten at the hearing about her carpal tunnel syndrome; considered her subjective complaints in rendering the decision; and, included limitations in the RFC specifically relating to that impairment (i.e.,

---

[3] On July 20, 2012, Michael Lehv, M.C., reviewed Nelson-Wooten's medical records and completed a Physical Residual Functional Capacity Assessment.  (Tr. 83-85.)  Therein, Dr. Lehv found Nelson-Wooten could lift and/or carry 20 pounds occasionally and 10 pounds frequently; stand and/or walk for a total of about 6 hours in an 8 hour workday and sit for a total of about 6 hours in an 8 hour workday.  (Tr. 83.)  He concluded Nelson-Wooten had no limitations in her abilities to push and/or pull; climb ramps or stairs; or, balance.  (Tr. 83-84.)  However, she was limited to occasional climbing of ladders, ropes and scaffolds; occasional crawling; and, frequent stooping, kneeling, and crouching.  (Tr. 84.)  Dr. Lehv also opined that Nelson-Wooten had no manipulative, visual, or communicative limitations, but that she should avoid concentrated exposure to hazards such as machinery, heights, etc.  (Tr. 84-85.)  Harvey Lester, M.D., conducted a opthalmological/optometric consultative examination of Nelson-Wooten on February 1, 2012.  (Tr. 495-497.)  No limitations were identified.  *Id.*

frequent bilateral handling and fingering). Moreover, with respect to Nelson-Wooten's knee impairment, her counsel expressly stated on the record that "that's not something that we're claiming is going on today" because the twelve month durational requirement had not been met for that condition. (Tr. 35-36, 48.) At no time did counsel request that the case be held open so that additional records could be submitted and, in fact, counsel did not submit any records after the hearing to the ALJ.

Further, to the extent Nelson-Wooten is arguing a remand is necessary because her counsel was ineffective, the Court rejects this argument. As this Court has previously observed, "federal courts have rejected arguments by other social security claimants who allege ineffectiveness or malpractice by their counsel in the representation of a claimant." *Meadows v. Astrue*, 2012 WL 5205798 at * 4 (N.D. Ohio Sept. 25, 2012). Indeed, "[t]he Supreme Court has never recognized a constitutional right to counsel in Social Security proceedings." *Cornett v. Astrue*, 261 Fed. Appx. 644, 651 (5th Cir. 2008) (citing *Brandyburg v. Sullivan*, 959 F.2d 555, 562 (5th Cir. 1992)). *See also Holland v. Heckler*, 764 F.2d 1560, 1562 (11th Cir. 1985) (finding that a claimant has "no constitutional right to counsel at a disability benefits hearing"); *Rosas v. Colvin*, 2014 WL 3736531 at * 3 (C.D. Cal. July 28, 2014); *Alvernaz v. Colvin*, 2014 WL 1338314 at * 8 (E.D. Cal. April 2, 2014); *Smith v. Colvin*, 2013 WL 2551951 at * 19 (N.D. Ohio June 7, 2013); *Garth v. Astrue*, 2013 WL 257090 at * 5 (N.D. Cal. Jan. 23, 2013).

Accordingly, Nelson-Wooten's arguments that the ALJ failed in his duty to develop the record or that counsel was ineffective are without merit. Nelson-Wooten's first assignment of error is denied.

### *Sentence Six Remand*

Nelson-Wooten next argues this matter should be remanded because she provided new and material evidence to the Appeals Council regarding her carpal tunnel syndrome and knee impairments. (Doc. No. 13 at 9-12.) She argues the Appeals Council recognized receipt but "did not discuss the merits of the evidence dealing with Plaintiff's condition prior to the issuance

13

of the ALJ's decision or whether it warranted remand, and rejected evidence after July 25, 2013 as information regarding a later time without evaluating whether it related back to Mrs. Nelson-Wooten's condition prior to July 25, 2013." *Id*. at 9-10. Nelson-Wooten argues that "[t]he new evidence, which existed before and after the issuance of the ALJ's decision, is also material since it is probable that the ALJ's decision would have been different if he had the probative evidence regarding Plaintiff's hand restrictions, need for carpal tunnel release and ACL reconstruction, and continuing hand and knee pain." *Id.* at 11. Finally, Nelson-Wooten asserts "there is good cause for Plaintiff's failure to submit the new evidence at hearing since she did her part by informing prior counsel and the ALJ of the evidence, but it was not incorporated into the proceeding." *Id.* at 11-12.

The Commissioner argues the Appeals Council properly considered the evidence submitted after the decision and determined it would not impact the ALJ's finding that Nelson-Wooten was not disabled. (Doc. No. 16 at 11-12.) The Commissioner further asserts Nelson-Wooten has not established good cause for her failure to timely submit evidence pre-dating the decision, arguing that "Plaintiff has failed to offer much in the way of explanation for her late submission of this evidence except to say that her prior counsel was ineffective." *Id*. at 12-13. The Commissioner also maintains the evidence is not "new" because it existed prior to the decision, and not "material" because EMG testing confirmed Nelson-Wooten's carpal tunnel syndrome was mild in severity and her knee injury does not meet the 12 month durational requirement. Finally, the Commissioner notes that "none of the additional evidence contained any sort of statement about functional limitations in order for them to qualify as medical opinions." *Id*. at 16.

The Sixth Circuit has repeatedly held that "evidence submitted to the Appeals Council after the ALJ's decision cannot be considered part of the record for purposes of substantial evidence review." *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). A district court can, however, remand the case for further administrative proceedings in light of such evidence, if a

claimant shows that the evidence satisfies the standard set forth in sentence six of 42 U.S.C. § 405(g). *Id. See also Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 148 (6th Cir. 1996); *Lee v. Comm'r of Soc. Sec.*, 529 Fed. Appx. 706, 717 (6th Cir. July 9, 2013) (stating that "we view newly submitted evidence only to determine whether it meets the requirements for sentence-six remand"). Sentence Six provides that:

> The court may . . . at any time order additional evidence to be taken before the Commissioner of Social Security, **but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding**; and the Commissioner of Social Security shall, after the case is remanded, and after hearing such additional evidence if so ordered, modify or affirm the Commissioner's findings of fact or the Commissioner's decision, or both, and shall file with the court any such additional and modified findings of fact and decision, and, in any case in which the Commissioner has not made a decision fully favorable to the individual, a transcript of the additional record and testimony upon which the Commissioner's action in modifying or affirming was based.

42 U.S.C. § 405(g) (emphasis added).

Interpreting this statute, the Sixth Circuit has held that "evidence is new only if it was 'not in existence or available to the claimant at the time of the administrative proceeding.'" *Foster*, 279 F.3d at 357 (quoting *Sullivan v. Finkelstein*, 496 U.S. 617, 626 (1990)). Evidence is "material" only if "there is 'a reasonable probability that the Secretary would have reached a different disposition of the disability claim if presented with the new evidence.'" *Id.* (quoting *Sizemore v. Sec'y of Health & Human Servs.*, 865 F.2d 709, 711 (6th Cir. 1988)). *See also Bass v. McMahon*, 499 F.3d 506, 513 (6th Cir. 2007) (noting that evidence is "material" if it "would likely change the Commissioner's decision."); *Courter v. Comm'r of Soc. Sec.*, 2012 WL 1592750 at *11 (6th Cir. May 7, 2012) (same). Moreover, "'[e]vidence of a subsequent deterioration or change in condition after the administrative hearing is deemed immaterial.'" *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 478 (6th Cir. 2003) (quoting *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 685 (6th Cir. 1992)). *See also Sizemore*, 865 F.2d at 712 ("Reviewing courts have declined to remand disability claims for reevaluation in light of medical evidence of a deteriorated

15

condition"); *Deloge v. Comm'r of Soc. Sec.*, 2013 WL 5613751 at * 3 (6th Cir. Oct. 15, 2013) (same).

In order to show "good cause," a claimant must "demonstrat[e] a reasonable justification for the failure to acquire and present the evidence for inclusion in the hearing before the ALJ." *Foster*, 279 F.3d at 357. *See also Willis v. Sec'y of Health & Hum. Servs.*, 727 F.2d 551, 554 (1984). "The mere fact that evidence was not in existence at the time of the ALJ's decision does not necessarily satisfy the 'good cause' requirement." *Courter*, 2012 WL 1592750 at * 11. Rather, the Sixth Circuit "takes 'a harder line on the good cause test' with respect to timing, and thus requires that the clamant 'give a valid reason for his failure to obtain evidence prior to the hearing.'" *Id.* (quoting *Oliver v. Sec'y of Health & Human Servs.*, 804 F.2d 964, 966 (6th Cir. 1986)). This includes "detailing the obstacles that prevented the admission of the evidence." *Courter*, 2012 WL 1592750 at * 11. *See also Bass*, 499 F.3d at 513.

The burden of showing that a remand is appropriate is on the claimant. *See Foster*, 279 F.3d at 357; *Ferguson v. Comm'r of Soc. Sec.*, 628 F.3d 269, 276 (6th Cir. 2010). When a district court grants remand pursuant to sentence six, it "neither affirm[s] nor reverse[s] the ALJ's decision, but simply remand[s] for further fact-finding." *Courter*, 2012 WL 1592750 at * 11. *See also Melkonyan v. Sullivan*, 501 U.S. 89, 98 (1991). Under these circumstances, the district court retains jurisdiction and enters final judgment only "after postremand agency proceedings have been completed and their results filed with the court." *Shalala v. Schaefer*, 509 U.S. 292, 297 (1993). *See also Melkonyan,* 501 U.S. at 98; *Marshall v. Comm'r of Soc. Sec.*, 444 F.3d 837, 841 (6th Cir. 2006).

Nelson-Wooten argues a sentence six remand is warranted based on the following evidence. On February 15, 2013 (nearly three months *prior to* the May 8, 2013 ALJ hearing), Nelson-Wooten presented to Laurence Bilfield, M.D., for treatment of bilateral wrist and hand pain. (Tr. 806.) Nelson-Wooten stated she thought she had suffered from carpal tunnel syndrome since 1998, although she acknowledged she had not had an EMG. *Id.* She described her pain as

16

stabbing, radiating, and penetrating, and rated it a 10 on a scale of 10. *Id*. Nelson-Wooten also reported she "has been in wrist braces and anti-inflammatories without much improvement." *Id*. On examination, Dr. Bilfield observed positive Phalen's and Tinel's, as well as decreased sensation in the median nerve distribution. *Id*. He diagnosed bilateral carpal tunnel syndrome and ordered an EMG. *Id*. In addition, Nelson-Wooten agreed to proceed with bilateral cortisone injections. *Id*.

Nelson-Wooten subsequently underwent an EMG on May 29, 2013, which showed "evidence of bilateral median neuropathies at or distal to the wrists consistent with carpal tunnel syndrome, about equal in severity on the two sides, and mild in degree electrically." (Tr. 808-809.)

Meanwhile, on May 7, 2013 (one day prior to the ALJ hearing), Nelson-Wooten underwent an MRI of her right knee which showed an ACL tear; a partial MCL tear; a nondisplaced fracture of the lateral tibial plateau; degenerative changes most pronounced in the lateral and patellofemoral compartments; joint effusion; and, a baker's cyst. (Tr. 792-793.) She was provided with a right knee immobilizer and crutches. (Tr. 810.) On May 11, 2013, Nelson-Wooten presented to James Hekman, M.D., for follow-up treatment. (Tr. 810-815.) Dr. Hekman noted Nelson-Wooten exhibited pain at fibromyalgia pressure points, and was morbidly obese. (Tr. 813.) He diagnosed tibial plateau fracture; carpal tunnel syndrome; benign hypertension; insomnia; fibromyalgia; and, ACL tear. (Tr. 814-815.) Dr. Hekman stated that he "suspect[ed] [Nelson-Wooten] will need surgery for ACL tear and possibly for fracture." *Id*.

On June 7, 2013 (subsequent to the hearing but over a month prior to the July 25, 2013 decision), Nelson-Wooten returned to Dr. Bilfield for treatment of her bilateral wrist and hand pain. (Tr. 819-822.) Dr. Bilfield noted that Nelson-Wooten had "EMGs which showed definite evidence of carpal tunnel mild in degree." (Tr. 819.) On examination, he observed positive Tinel's in her bilateral wrists and median nerve distribution right worse than left. *Id*. Dr. Bilfield diagnosed right carpal tunnel syndrome, and ordered a carpal tunnel release. *Id*.

17

Nelson-Wooten presented to Dr. Bilfield for a pre-operative examination on June 19, 2013. (Tr. 758-762.) At that time, Nelson-Wooten reported that her right wrist pain increased with activity and ranged from a four to a ten on a scale of ten. (Tr. 759.) On June 20, 2013, Dr. Bilfield performed a right carpal tunnel release procedure. (Tr. 763-765.) Nelson-Wooten returned to Dr. Bilfield for a follow-up appointment on June 28, 2013, at which time she was described as "doing well" and showing "no signs of infection or drainage." (Tr. 828.)

On July 26, 2013, Nelson-Wooten presented to Dr. Bilfield for treatment both of her carpal tunnel syndrome and her knee pain. (Tr. 838-841.) With regard to her carpal tunnel, Dr. Bilfield found that Nelson-Wooten's wrist "had [a] well-healed wound" with "no signs of infection or drainage." (Tr. 839.) With regard to Nelson-Wooten's knees, Dr. Bilfield noted "good range of motion definite pain both knees and lateral joints." *Id*. He also observed "positive Lachman, and positive drawer consistent with an ACL tear." *Id*. Dr. Bilfield diagnosed status post carpal tunnel release; knee anterior cruciate ligament; and arthritis. *Id*. He recommended Nelson-Wooten undergo a right ACL reconstruction, and Nelson-Wooten said she would "strongly consider" it. *Id.*

It appears Nelson-Wooten underwent an ACL reconstruction shortly thereafter. (Tr. 846.) On September 20, 2013, she presented to Dr. Bilfield with complaints of bilateral knee pain. *Id*. At that time, Dr. Bilfield stated Nelson-Wooten "previously had a right ACL reconstruction and is doing fairly well with no major problems." *Id*. On examination, he noted "her [right] knee had no signs of infection or drainage" and her "range of motion went from about 0 to about 80 degrees of flexion and there was no instability appreciated." *Id*. Dr. Bilfield prescribed Vicodin, and recommended Nelson-Wooten continue range of motion exercises. *Id.*

The Court finds Nelson-Wooten has failed to demonstrate she is entitled to a sentence six remand. As an initial matter, the majority of the evidence described above is not "new" because (1) it pre-dates the July 25, 2013 decision; and, (2) Nelson-Wooten has not argued it was unavailable to her prior to the decision. *Foster,* 279 F.3d at 357. Moreover, even assuming it

18

qualified as "new," Nelson-Wooten has not shown that any of the above evidence (whether pre- or post-dating the ALJ decision) is "material." i.e., that "there is 'a reasonable probability that the Secretary would have reached a different disposition of the disability claim if presented with the new evidence.'" *Id.* The EMG of Nelson-Wooten's wrists confirmed carpal tunnel syndrome, but found it to be mild in degree. While Nelson-Wooten did undergo a right carpal tunnel release on June 20, 2013, her subsequent medical records indicate she recovered well from this procedure; i.e., her wound healed properly and she exhibited no signs of infection or drainage. Moreover, Nelson-Wooten does not explain how she believes this evidence demonstrates a "reasonable probability" that the ALJ would have found her disabled had he considered it. Nor does she identify any additional limitations she believes should have been included in the RFC as a result of this evidence, or point to any treating physician opinion that would support a more restrictive RFC than that set forth by the ALJ.

With regard her right knee injury and ACL reconstruction, Nelson-Wooten cannot demonstrate materiality because she has not established (and makes no argument that) this condition would satisfy the twelve month durational requirement. Indeed, Nelson-Wooten's attorney acknowledged during the hearing that her right knee injury was "a recent diagnosis, and that's not something that we're claiming is going on today." (Tr. 35-36.) Nelson-Wooten points to no evidence suggesting otherwise in her briefing before this Court.

Finally, the Court finds the evidence regarding her May 2013 fibromyalgia diagnosis is not "material." The only evidence presented regarding this condition is the diagnosis itself. However, as the Sixth Circuit has noted, "'a *diagnosis* of fibromyalgia does not automatically entitle [the claimant] to disability benefits.'" *Torres v. Comm'r of Soc. Sec.*, 490 Fed. Appx. 748, 754 (6th Cir. 2012) (quoting *Vance v. Comm'r of Soc. Sec.*, 260 Fed. Appx. 801, 806 (6th cir. 2008))(emphasis in original). *See also Williams v. Comm'r of Soc. Sec.*, 2013 WL 3716865 at * 7, fn 4 (W.D. Mich. July 12, 2013) ("In the vast majority of cases, a medical diagnosis does not establish 'disability'"). This is because "some people may have a severe case of fibromyalgia as

19

to be totally disabled from working. . . but most do not and the question is whether [claimant] is one of the minority." *Sarchet v. Claret*, 78 F.3d 305, 307 (7th Cir. 1996). Here, Nelson-Wooten points to no evidence regarding the severity of her fibromyalgia or any additional functional limitations that allegedly result therefrom. The Court, therefore, finds she has failed to establish that the evidence submitted to the Appeals Council regarding her fibromyalgia is "material."

As Nelson-Wooten has failed to demonstrate that the evidence at issue is both "new" and "material," the Court need not reach the issue of whether she has demonstrated "good cause" for failing to submit the evidence that did pre-date the May 8, 2013 hearing or the July 25, 2013 decision to the ALJ.

Accordingly, and for all the reasons set forth above, Nelson-Wooten's second assignment of error is without merit.

### VII. Decision

For the foregoing reasons, the Court finds the decision of the Commissioner supported by substantial evidence. Accordingly, the decision is AFFIRMED.

IT IS SO ORDERED.

/s/ Greg White
U.S. Magistrate Judge

Date: October 16, 2015